# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**UNITED STATES OF AMERICA,**

vs.                                                 Case No.  4:07cr22-RH
                                                            Case No.  4:09cv260-RH/WCS

**DARRELL LEE KILGORE,**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Pending in this case is a motion to vacate and set aside a sentence filed pursuant to 28 U.S.C. § 2255.  Doc. 64.  The United States filed a response.  Doc. 68.  Defendant filed a reply.  Doc. 72.

Defendant has also filed a supplemental memorandum, doc. 74, a motion for summary judgment, doc. 76, and a motion to expedite.  Doc. 77.  The Government responded to the motion for summary judgment.  Doc. 80.  Defendant replied.  Doc. 82.

**Legal standards govern this motion**

Errors raised and disposed of on direct appeal are not considered on a § 2255 motion absent an intervening change of law.  <u>Davis v. United States</u>, 417 U.S. 333, 342, 94 S.Ct. 2298, 2303, 41 L.Ed.2d 109 (1974); <u>United States v. Nyhuis</u>, 211 F.3d 1340 , 1343 (11th Cir. 2000) (citation omitted).  "A rejected claim does not merit rehearing on a

different, but previously available, legal theory." Nyhuis, 211 F.3d at 1343, citation omitted. If the issue was not raised and decided against Defendant on appeal, on the other hand, it is procedurally barred and will not be reviewed absent a showing of cause and prejudice. Id., at 1344 (citations and footnote omitted). "Ineffective assistance of counsel may satisfy the cause exception to a procedural bar," but "the claim of ineffective assistance must have merit." Nyhuis, 211 F.3d at 1344, citation omitted. Ineffective assistance of counsel may be raised in a § 2255 motion, whether or not it could be raised on direct appeal. Massaro v. United States, 538 U.S. 500, 504, 123 S.Ct. 1690, 1693-1694, 155 L.Ed. 2d 714 (2003).

Ineffective assistance of counsel claims are governed by Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674 (1984). Under the two part test of Strickland, Defendant must demonstrate both deficient performance and prejudice to the outcome.

"A convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. "Conclusory allegations of ineffective assistance are insufficient." Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992). In reviewing the claim, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690, 104 S.Ct. at 2066.

For prejudice, Defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.

**Ground one, illegal stop and unlawful acquisition of evidence**

Defendant contends that he was illegally stopped by Officer Anderson, and that as a consequence, the search which followed (leading to the discovery of the firearms for which Defendant was convicted) was unlawful. Doc. 64, memorandum, pp. 2-4. The Government argues the merits of the claim. Doc. 68, pp. 8-9.

This court cannot reach the merits of this Fourth Amendment claim because Defendant had a full and fair opportunity to litigate it before this court and his attorney was not ineffective in litigating it (see ground two). See doc. 11 (minutes of hearing on motion to suppress). United States v. Ishmael, 343 F.3d 741, 742-743 (5th Cir. 2003), *cert. denied*, 540 U.S. 1204 (2004) (applying Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) to a § 2255 motion); United States v. Davis, 2007 WL 1068480, *6 (N.D. Fla. Apr 09, 2007) (No. 5:01CR15-RH/WCS).

**Ground two, ineffective assistance of trial counsel**

Defendant contends that his trial attorney, Steven Glazer, was ineffective in several ways.

### Hearsay evidence at the motion to suppress hearing

Defendant contends that his attorney should have objected to hearsay evidence at the motion to suppress hearing, and that without the hearsay, the motion to suppress would have been granted. Doc. 64, memorandum, p. 5. This claim is without merit.

Hearsay evidence is admissible on a motion to suppress.[1] <u>United States v. Raddatz</u>, 447 U.S. 667, 679, 100 S.Ct. 2406, 2414, 65 L.Ed.2d 424 (1980).

### Bruce Duncan as a witness at the motion to suppress hearing

Defendant contends that his attorney was ineffective for failing to call his employer, Bruce Duncan, as a witness at the suppression hearing to testify as to where Defendant was at the time that other witnesses described a truck that resembled Defendant's truck located near fresh corn that was found dumped beside the road. Doc. 64, memorandum, p. 6. Defendant asserts that Mr. Duncan would have testified that Defendant was at work on the days that witnesses said he was seen near the places where corn was dumped, to lure deer or wild hogs on roads going through the wildlife refuge. Doc. 72, p. 4.

The only relevance of Mr. Duncan's possible testimony would have been with respect to the motion to suppress the seizure of the firearms and ammunition. Defendant was assuredly not at work when Anderson found him in possession of the firearms and ammunition.

A successful motion to suppress is a necessary predicate to this claim faulting counsel for failure to file (or here, to successfully litigate) such a motion. <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 382, 109 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986). As will be explained in greater detail ahead, Duncan's testimony was essentially irrelevant to the motion to suppress because Officer Anderson did not have and reasonably could not

---

[1] Defendant had already heard this hearsay evidence in the hearing on the motion for detention. Doc. 14, pp. 14, 19-20.

have had Duncan's evidence, whatever it might have been, when he conducted the *Terry* stop.

A traffic stop "is a seizure within the meaning of the Fourth Amendment," and "is constitutional if it is either based upon probable cause to believe a traffic violation has occurred or justified by reasonable suspicion in accordance with *Terry* [v. *Ohio*], 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 [(1968)]." United States v. Spoerke, 568 F.3d 1236, 1248 (11th Cir. 2009) (citations omitted). The suppression issue was whether Officer Anderson had a sufficient basis to make a *Terry* stop.

> With regard to the second category of police-citizen encounters – brief seizures and investigatory detentions, *Perez*,[2] 443 F.3d at 777 – the Fourth Amendment does not prohibit a police officer, "in appropriate circumstances and in an appropriate manner [from] approach[ing] a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest," *Terry*, 392 U.S. at 22, 88 S.Ct. 1868. That is, law enforcement officers may seize a suspect for a brief, investigatory *Terry* stop where (1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop "was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 19–20, 30, 88 S.Ct. 1868.

United States v. Jordan, 635 F.3d 1181, 1185 (11th Cir.), *cert. denied*, --- S.Ct. ---- (Oct 03, 2011).

Probable cause or reasonable suspicion can, and often is, based upon hearsay gathered by law enforcement officers. "It is enough, for purposes of assessing probable cause, that 'corroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the

---

[2] United States v. Perez, 443 F.3d 772, 777 (11th Cir.2006).

hearsay.' " Illinois v. Gates, 462 U.S. 213, 244-245,103 S.Ct. 2317, 76 L.Ed. 2d 527 (1983).

At the hearing on Defendant's motion to suppress, Fish and Wildlife Officer Lawrence Anderson testified that in late 2006, he received a telephone call from Florida Wildlife Commission Captain Robert Beeton. Doc. 47, p. 5. Beeton said he was traveling north on Shell Point Highway when he observed a silver-grey pickup truck, with two wheels on the road and two off, and observed what appeared to be shotgun shells on the road in an area where there had been a lot of feral hogs. *Id.* He ran the tag and it was registered to Defendant. *Id.*, p. 6. Anderson soon drove to the area and noted a lot of soil disruption from feral hogs. *Id.* He said that the month earlier, he had found a pile of whole kernel corn on Live Oak Island Road, adjacent to Shell Point Highway.[3] *Id.*, and p. 8. Anderson had started surveillance in that area. *Id.* He said that in December, 2006, like "clockwork," Defendant's vehicle drove down Shell Point Highway slowly, beside a deer decoy that had been set out, and he turned around, but did not shoot at the decoy. *Id.*, pp. 9-10. That part of the road is straight and the speed limit is 55 miles per hour. *Id.*, p. 10.

Anderson said that in late January, 2007, Captain Beeton called him and said that his 15 year old daughter, who lives at Shell Point at the end of that road, was going to school and saw a vehicle fitting the description of Defendant's truck and a man fitting Defendant's description dumping corn beside the road. *Id.*, pp. 10-11. On January 31,

---

[3] The two roads fork off from a common point going south toward the coast and traverse the St. Marks Wildlife Refuge somewhat parallel and at an angle to each other.

2007, Anderson went to the place described by Beeton and found a pile of corn, some of which was sour, with feeding raccoons and numerous hog tracks. *Id.*, p. 11.

On February 3, 2007, Officer Anderson and FWC Officer Olsen set up surveillance on Shell Point Road from about 6:30 a.m. to 8:00 a.m., but saw nothing. *Id*. They got into their vehicle and traveled north on Shell Point Highway where they saw Defendant and his wife coming south in Defendant's truck at a slow rate of speed. *Id.*, pp. 11-12. The officers turned around, headed south, met Defendant and his wife heading north, and as they passed again, Defendant and his wife saw the officers. *Id.* Officers Anderson and Olsen turned around, headed back north, and went over to Live Oak Island road. *Id.* There was corn beside the road and a corn sack on Live Oak Island Road. *Id.* They saw a vehicle and some people fishing in a creek, Walker Creek, about 100 yards away from the corn. *Id.* and p. 38. The fishermen said they had seen a gray-silver Ford pickup truck parked on the side of the road near the corn when they had arrived to fish that morning.[4] *Id.*, p. 12.

Suspecting that Defendant was "road hunting," Anderson and Officer Schremser set up surveillance on Live Oak Island Road the next day, a Sunday, facing north toward where the corn had been placed. *Id.*, p. 13. The speed limit on that stretch of road is also 55 miles per hour. *Id.* They saw a silver-gray pickup truck approaching from a distance and using radar, clocked it at 35 miles per hour. *Id.*, pp. 13-14. Recognizing Defendant approaching, Anderson decided to stop Defendant "and see what's up." *Id.*, p. 14. Anderson activated his blue lights behind Defendant. *Id.*

---

[4] They had seen only the vehicle and not the corn.

Defendant did not immediately pull over, but went at least another 2/10ths of a mile.  *Id*.  While the road was narrow there, there was room to pull over.  *Id*.

For safety, Anderson ordered Defendant to put his hands on the wheel when he approached him since he suspected that Defendant had a firearm and might use it.  *Id*., p. 15.  As he approached the truck, Anderson saw firearms on the front console and front seat of the truck.  *Id*., p. 16.  He ordered Defendant out of the vehicle and placed him into handcuffs.  *Id*.  Officer Schremser, who had accompanied Anderson, removed the firearms and placed them on the back of the truck.  *Id*.  Defendant kept saying, "What's going on here, Larry?  You know me, you know me," and Anderson said "You're not supposed to have firearms.  You're a convicted felon."  *Id*.  Defendant replied, "Those aren't my guns.  They're registered to my wife.  You can check."  *Id*., pp. 16-17.  Anderson replied that long guns did not need to be registered.  *Id*., p. 17.  Anderson said to Defendant, "If your fingerprints come back on these, that's going to be a problem," and Defendant said, "My fingerprints are going to be all over those, because I clean those guns for Deborah."  *Id*.  The bolt was removed from the rifle, but a shotgun shell was chambered in the shotgun.  *Id*.  Shotgun shells were in the glove box, on the floor, on the driver's side door compartment, and in the cellphone holder on the dashboard.  *Id*.  A photo album was found with photographs of Defendant and his wife holding guns and with game (which at trial was identified as a deer).  *Id*., pp. 17-18.  A date on the back of the photographs indicated they were developed in November, 2006, just a few months earlier.  *Id*., p. 18.

Defendant's attorney conducted a *thorough* cross examination of Officer Anderson and made a lengthy argument in support of the motion to suppress.  *Id*., pp.

19-38, 41-46, 48. The court denied the motion, finding that Officer Anderson had "reasonable suspicion to believe that criminal activity might be afoot" sufficient to make a *Terry* stop. *Id.*, p. 49. The court limited its consideration to all of the evidence known to Officer Anderson before he activated his blue lights, reasoning that that was the point of restraint. *Id.*

Defendant's employer, Mr. Duncan, would have provided nothing of importance to undermine the court's findings. Officer Anderson did not have such evidence when he made his decision to stop Defendant and the propriety of the stop had to be judged based upon the evidence he had at the time. He himself had seen Defendant behaving suspiciously along the two adjacent roads in the Wildlife Refuge, and his own observations were corroborated by the hearsay reports and eye witness reports of others. Further, even if he had had time to call Duncan to see whether Defendant was working on particular days, the circumstantial evidence known by Officer Anderson leading to the stop was not specific as to dates. Defendant has failed to show either attorney error or prejudice to the outcome for failure to call Duncan as a witness on the motion to suppress.

### Ineffectiveness for not seeking suppression of statements due to a lack of *Miranda* warnings

Defendant contends that his attorney was ineffective for failing to establish that he was not provided *Miranda* warnings when he was arrested. Doc. 64, memorandum, p. 4.[5] Statements Defendant made to Anderson at the time of the encounter were admitted into evidence at trial. Doc. 49 (trial transcript), pp. 39-49.

---

[5] The motion to suppress evidence derived from the stop did not mention *Miranda*. Doc. 8.

"If a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed. 2d 316 (1984). "In determining whether a person was in custody, we look to whether he was physically deprived of his freedom in any significant way or if a reasonable person in the defendant's position would have understood that his freedom was so restrained." United States v. Lall, 607 F.3d 1277, 1284 (11th Cir. 2010).

The Eleventh Circuit employs four factors to determine when a *Terry* stop becomes an arrest:

> In *United States v. Hardy*, 855 F.2d 753 (11th Cir.1988), we set out four nonexclusive factors to aid us in differentiating between a Terry stop and an arrest: (1) the law enforcement purpose served by the detention; (2) the diligence with which the officers pursued the investigation; (3) the scope and intrusiveness of the investigation; and (4) the duration of the detention. *Id.* at 759. In balancing these factors, we are to focus on "whether the police diligently pursued a means of investigation likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Acosta*, 363 F.3d 1141, 1147 (11th Cir. 2004) (citing *United States v. Sharpe*, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985)).

United States v. Street, 472 F.3d 1298, 1306 (11th Cir. 2006). Further,

> use of handcuffs in the course of an investigatory stop does not automatically convert the encounter into a *de facto* arrest. See *Perdue*, 8 F.3d at 1463[6] (collecting cases); *Quinn*, 815 F.2d at 157 n. 2.[7] Police officers engaged in an otherwise lawful stop must be permitted to take measures—including the use of handcuffs—they believe reasonably necessary to protect themselves from harm, or to safeguard the security of others. See, e.g., *Michigan v. Long*, 463 U.S. 1032, 1047, 103 S.Ct. 3469,

---

[6] United States v. Perdue, 8 F.3d 1455, 1462 (10th Cir. 1993).

[7] United States v. Quinn, 815 F.2d 153, 156 (1st Cir. 1987).

Case Nos. 4:07cr22-RH and 4:09cv260-RH/WCS

77 L.Ed.2d 1201 (1983); *Washington*, 98 F.3d at 1186;[8] *United States v. Stanley*, 915 F.2d 54, 57 (1st Cir.1990).

United States v. Acosta-Colon, 157 F.3d 9, 18 (1st Cir. 1998).  *Accord*, United States v. Kapperman, 764 F.2d 786, 790 n. 4 (11th Cir. 1985).

In this case, when Officer Anderson activated his lights and pulled Defendant to the side of the road, a *Terry* stop occurred (as this court determined at the motion to suppress hearing).  Anderson approached Defendant's truck and for his own safety, ordered Defendant to put his hands on the steering wheel.  Anderson then saw firearms plainly visible in the cab of the truck.  He ordered Defendant out and handcuffed him.  The use of handcuffs was the next reasonable safety step, to make it difficult for Defendant to use one of the firearms.  Defendant immediately said, "What's going on here, Larry?  You know me, you know me," and Anderson explained, "You're not supposed to have firearms.  You're a convicted felon."  Defendant replied, "Those aren't my guns.  They're registered to my wife.  You can check."  Anderson replied that long guns do not need to be registered.  *Id.*, p. 17.  Anderson said to Defendant, "If your fingerprints come back on these, that's going to be a problem," and Defendant replied, "My fingerprints are going to be all over those, because I clean those guns for Deborah."  *Id.*

All of this exchange was reasonably related to the purpose of the investigatory stop and happened rapidly, while Anderson was still conducting a *Terry* investigation.  Defendant was not in handcuffs for very long before these statements were made.  While a basis for an arrest rapidly developed, it cannot be said an arrest had yet

---

[8] Washington v. Lambert, 98 F.3d 1181, 1185 (9th Cir. 1996).

occurred such that *Miranda* warnings were required before Defendant made these statements. Consequently, Defendant has not shown that his attorney committed attorney error by not filing a motion to suppress.[9]

**Debra Kilgore as a witness at trial**

Defendant also contends that his attorney was ineffective for failing to call his wife, Debra[10] Kilgore, as a witness at trial to testify that he did not possess the firearm. Doc. 64, memorandum, p. 6.

Attached is her affidavit signed on July 1, 2008. Doc. 64, memorandum, Ex. B. Ms. Kilgore states that on the date of the offense, February 4, 2007, she and her husband were returning from her husband's parent's' home in Sopchoppy, that she "wanted to go hunting but, the wind was blowing to [sic] hard, so we decided to head home and have breakfast." *Id.*, p. 2. She said that "on the way we decided to ride over to Live Oak Island and look at the water to check the tides for a possible fishing trip later in the day." *Id.* She said that after they were stopped, she told the officers that the guns belonged to her and that she was responsible for them being in the truck. *Id.* Ms. Kilgore states that she was told by Defendant's attorney that the jury would not believe

---

[9] If the court adopts this recommendation, it need not address the Government's argument that Anderson did not "interrogate" Defendant. Doc. 8, p. 10. "Interrogation . . . means 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.' " United States v. Gomez, 927 F.2d 1530 (11th Cir. 1991), quoting Rhode Island v. Innis, 446 U.S. 291, 298–99, 100 S.Ct. 1682, 1688–1689, 64 L.Ed.2d 297 (1980).

[10] Her first name is spelled Deborah in her affidavit. Doc. 64, memorandum, Exhibit B (doc. 64-2, pp. 24-25 on ECF).

her.  *Id.*  She states that no fingerprints were on either of the guns or on the shells that were found, and she took "full responsibility for them."  *Id.*

Defendant's attorney did not commit attorney error in not calling Ms. Kilgore as a witness, and the lack of her testimony did not cause prejudice to the outcome.  Driving a long distance to determine the tides (rather than looking in a newspaper) so that she and Defendant could fish on a very windy day seems unworthy of belief.  Further, it seems like a rehearsed defense, with Ms. Kilgore as "straw" gun possessor.  Defendant asserted during the arrest that the long guns were "registered" to his wife, but he has not shown that long guns are registered at all.  The spontaneous statement, rather, is more liked his rehearsed excuse, that his wife *bought* the guns for him to use.  Defendant was driving on each occasion that he was seen by Officer Anderson.  Beeton's daughter saw someone driving a truck like Defendant's and looking like Defendant dumping corn along side the road.  Defendant told Officer Anderson that his fingerprints would be on the firearms.  Finally, and of greatest importance to undermine Ms. Kilgore's potential testimony, a photograph of Defendant *holding a firearm and with game* was found in the truck, and it had been developed only a few months previously.  The photograph conclusively showed Defendant's possession of the guns so that he could hunt.  This claim of ineffective assistance of counsel is without merit.

In summary, all of the claims of ineffective assistance of counsel presented in ground two are without merit.

**Ground three, ineffective assistance of sentencing counsel**

Defendant contends that Armando Garcia, who replaced Glazer for sentencing, was ineffective for failing to show that Defendant's conviction for third degree burglary

did not qualify as a crime of violence under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e).  Doc. 64, memorandum, p. 7.  Defendant has provided additional arguments as to this issue in his motion for summary judgment.  Doc. 76.  The Government responded to that motion.  Doc. 80.

The conviction at issue was a 2005 conviction for burglary of a structure.  Doc. 68, p. 11; doc. 51, pp. 33-34.  Mr. Garcia cited the case relied upon by Defendant now, United States v. Day, 465 F.3d 1262 (11th Cir. 2006), also referenced United States v. Matthews, 466 F.3d 1271 (11th Cir. 2006), and then admitted that he could not make a good faith argument that the conviction did not qualify under the ACCA.  *Id.*, pp. 34, 36-37.  The court said that, according to the presentence report, Defendant entered Thomas's Seafood in Panacea, removed seafood from the cooler, and traded the food for drugs.  *Id.*, p. 36.

Ineffective assistance of counsel has not been shown.  Matthews makes it clear that third degree burglary of a structure or the curtilage of a structure in Florida is an ACCA crime of violence.  The court there reasoned:

> Regardless of whether a burglar breaches the roofed portion of a structure, his unlicensed entry into the enclosed area surrounding that structure may bring him into close physical proximity with the same persons he might encounter were he to enter the structure.  He may come into contact with the property's owners, occupants, or caretakers.  His close physical presence to the structure could lead an innocent person to investigate why he is there, and his presence alone could reasonably be perceived by any of these persons as threatening.  Either the innocent or the burglar might react violently.

466 F.3d at 1275.  As further explained in an unpublished Eleventh Circuit case arising from a conviction in this division after Defendant's sentencing:

> A "violent felony" includes, among other things, generic burglary. See § 924(e)(2)(B)(ii); *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 2158, 109 L.Ed.2d 607 (1990). But even if burglary is not generic burglary, it still may qualify as a crime of violence if it "involves conduct that presents a serious potential risk of physical injury to another." *James v. United States*, 550 U.S. 192, 127 S.Ct. 1586, 1591, 167 L.Ed.2d 532 (2007) (quoting section 924(e)(2)(B)(ii)). In Florida, burglary of the curtilage of a structure is a violent felony under section 924(e) because of the possibility of face-to-face confrontation. *United States v. Matthews*, 466 F.3d 1271, 1275 (11th Cir. 2006). And attempted burglary of a structure also is a violent felony under the ACCA. *James*, 127 S.Ct. at 1597-98. We conclude that Parrish's Florida convictions for burglary of a structure – even if they were not for generic burglaries – qualify as violent felonies because the criminal acts posed the risk that Parrish would have a face-to-face confrontation with another person while crossing the curtilage or within the interior of the structure.

<u>United States v. Parrish</u>, 312 Fed.Appx. 297, 300 (11th Cir. 2009) (not selected for publication in the Federal Reporter, No. 07-15272). Thus, ground three is without merit.

**Ground four, sentencing error as to the 2005 burglary conviction**

Defendant again asserts that the third degree burglary of a structure should not have counted as a crime of violence, but not in the context of an ineffectiveness claim. Doc. 64, memorandum, p. 9.

This is a claim that should have been raised on appeal but was not. Ineffective assistance of counsel would constitute cause for the procedural default, as explained at the beginning and will be discussed with respect to ground six, but ineffectiveness of trial or appellate counsel has not been shown. Technically the court cannot reach the merits of this claim directly, but it is without merit for the reasons noted above.

**Ground five, failure to give *Miranda* warnings**

Defendant contends that statements he made without *Miranda* warnings were inadmissible against him. Doc. 64, memorandum, p. 10. This claim is without merit, as discussed above.

**Ground six, whether appellate counsel was ineffective**

Defendant contends that his appellate counsel was ineffective for failing to raise grounds one through five on appeal. Doc. 64, memorandum, p. Defendant's appellate counsel filed only an *Anders*[11] brief. This claim is without merit for the reasons discussed above.

**Supplemental claim**

Defendant contends that his trial counsel was ineffective for failing to argue that his 1993 conviction for battery upon a law enforcement officer should not have counted as a crime of violence in his sentencing.[12] Doc. 74, p. 3. Defendant relies upon Johnson v. United States, __U.S. __, 130 S.Ct. 1265, 176 L.Ed. 2d 1 (2010). The Government has not responded to this new claim and has not made any argument that the claim is untimely.

Defendant's attorney cannot be faulted for not relying upon Johnson, a case decided several years after Defendant's sentencing. United States v. Ardley, 273 F.3d 991, 993 (11th Cir. 2001) (J. Carnes, concurring in the denial of rehearing en banc) ("[i]n this circuit, we have a wall of binding precedent that shuts out any contention that an

---

[11] Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

[12] According to the Presentence Report, referring to a report filed by the Wakulla County Sheriff's Office, on June 17, 1993, Defendant bit a Wakulla County officer in the leg at the jail, breaking the skin and causing bleeding. PSR, ¶ 31.

attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel," which "applies even if the claim based upon anticipated changes in the law was reasonably available at the time," and "even when the change is such that the forfeited issue was, in hindsight, a sure fire winner.") (collecting cases).

Further, even had he shown that the 1993 battery conviction were not a crime of violence, Defendant had three qualifying convictions: two convictions for arson and one for burglary of a structure. Arson is an enumerated violent felony for purposes of sentencing pursuant to 18 U.S.C. § 924(e)(2)(B)(i).[13] United States v. Rainey, 362 F.3d 733, 736 (11th Cir.) (*per curiam*), *cert. denied*, 541 U.S. 1081 (2004) (finding that attempted arson in Florida is an ACCA qualifying felony). Thus, even if there were attorney error, and there is not, Defendant has not shown prejudice to the outcome. The supplemental claim of ineffective assistance of counsel is without merit.

**Certificate of Appealability**

As amended effective December 1, 2009, § 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2255 11(b).

---

[13] According to the Presentence Report, referring to an arrest affidavit, Defendant threw a "Molotov cocktail" through the window of his girlfriend's residence in Dallas, Texas, in 1993, and, according to a police report, he threw a firebomb through the window of another girlfriend's residence in Miami, Florida, in 2004. PSR, ¶¶ 30, 44.

Case Nos. 4:07cr22-RH and 4:09cv260-RH/WCS

I find no substantial showing of the denial of a constitutional right. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, I recommend that the court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is a timely objection to this recommendation by either party, that party shall bring any argument relevant to a certificate of appealability to the attention of the district judge. Failure to present argument in objections may waive the argument that could have been presented.

**Conclusion**

For these reasons, it is **RECOMMENDED** that Defendant Darrell Lee Kilgore's motion to expedite ruling, doc. 77, be **GRANTED**, that his motion for summary judgment, doc. 76, be **DENIED**, that his motion to vacate and set aside a sentence filed pursuant to 28 U.S.C. § 2255, doc. 64, as supplemented, doc. 74, be **DENIED WITH PREJUDICE**, and that a certificate of appealability be **DENIED** pursuant to § 2255 Rule 11(a). It is further **RECOMMENDED** that the court **CERTIFY** that any appeal is not taken in good faith and leave to proceed *in forma pauperis* be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on November 10, 2011.

                                            s/ William C. Sherrill, Jr.
                                            **WILLIAM C. SHERRILL, JR.**
                                            **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.